I turn to the last case on the calendar today, which is entitled Miller v. City of New York or Bloise v. City of New York. Mr. Archibald. Good afternoon, your honors. I'd like to reserve two minutes. My name is Roger Archibald, and I represent the appellants in this case. They number in excess of 2,500. They are the school crossing guards of the City of New York, and they are predominantly female. Approximately 96% of school crossing guards are women. Now, this case is about the violation of the Equal Pay Act, or the EPA, as it relates to equal pay for equal work. What this case is also about is the fact that the city employs traffic enforcement agents who are predominantly male. And when those traffic enforcement agents are assigned to school crossing guard posts, they are paid significantly more than the school crossing guard themselves. This case covers a period of four years, from 2012 to 2016. And during that period of time, the average salary for a school crossing guard was $14.67, while the average salary for a traffic enforcement agent was $20.65. So I take it that your claim has to be that the traffic enforcement agents really have to have kind of two schedules for their salaries. One when they're doing school crossings, and one when they're doing all the other stuff they do. That's not our position, your honor. I don't understand how these jobs are comparable, I mean, the otherwise. School crossing guards have certain responsibilities, and traffic enforcement agents can be school crossing guards as part of their duties, but they have much broader duties and much more responsibility in many ways. That may be so, your honor. But in order to look at an appropriate comparator and all the case law, as well as the EPA says the following, what you focus on is job function and job content when you're comparing the job done by, let's say, the school crossing guard or the aggrieved party and the person they're comparing themselves to, your honor. And if I may continue, now, there was a case in which this court opined back in 2014. That's the Marist case, and I believe your honor was the presiding judge in that case at the time. And in that case, what you permitted the plaintiff to do is to look at a composite for a comparator, as well as focusing on one individual. That was a case involving a professor who believed she was being underpaid, and she was permitted to look at all the departments in the University of Marist College and look at the salaries of the male professors across several departments, not just the department that she was taught in. And as a result of that, it came up with a statistical imbalance in terms of the salary that was being paid. And that's what we're asking this court to do here because, your honor, if I may, we're looking at this New York City Police Department as the entity. The school crossing guards work in one department. Mr. Archibald. Professors of the school. I'm sorry. Go ahead. Go ahead, Peter. Yes. Aren't the traffic enforcement officers required to do a variety of activities that the school crossing guards are not able to do by virtue of their training? That is correct, but it's irrelevant for the analysis here, your honor, and I'll tell you why. School crossing guards are tasked with one main job. That is to safely cross children and their caregivers at school crossing posts. That's it. As a matter of fact, traffic enforcement agents, that's not a part of their job description. It's not a part of what they normally do. However, on a daily basis, at least 70 to 80 traffic enforcement agents are pulled from the ranks and put in school crossing posts, and they work the entire shift. School crossing guards work. Law enforcement officers ever asked or told that they have to go do school crossing guard duties? Yes, they are. On a daily basis, the traffic enforcement, did you say police officers? I said police officers. Oh, okay. You're going above.  Okay. More responsibilities for law enforcement arrest. No, they are not, your honor. Would they be? I presume they can be, but I don't think that would be a fair analysis in this case because the only people we're comparing them to are the traffic enforcement agents, your honor, and they are on a daily basis. As a matter of fact, it's quoted in our brief. In a nine-month period in 2016, they logged over 20,000 hours in school crossing posts. It's not something they do as a happenstance. It's not something they do every once in a while. It's something they do every single day, including today. They may do it every day, and I'm sure they're out there right now. But that's less than 2% of what the traffic enforcement officers do. They have all these other responsibilities and enforcement responsibilities, and they have to make judgments that are different. They have training that is different, and the job description is going to be different. But, your honor, this court has opined on countless occasions that job description is irrelevant in an EPA analysis. What's irrelevant? It's irrelevant if, in fact, the work on the ground is the same. But the work on the ground here, it seems to me, is not the same because of the additional duties that the traffic enforcement officers have. But the work on the ground when they are at a school crossing post is exactly the same, your honor. There is no difference, and that is what I'm asking this court to look at. The work on the ground when they are assigned to the school crossing post because no other comparative analysis would make sense under the circumstances. Traffic enforcement officers, as I understand the record, and please correct me if I'm wrong, traffic enforcement officers are given, I mean, we'll pick a rate of pay or you can tell me what it is, but hypothetically, $30 an hour. Sure. Fine. All right. They are required, when their supervisors tell them, you'll go to the school crossing for half a day, but then you will be on doing your other duties. They're not said, they are not told, when you're at the traffic . . . sorry, when you're at the school crossing guard space, I think this gets back to one of Judge Walker's early questions, when you're doing school crossing duty, you're going to get paid $15 an hour, and then when you get back on your other duties that you are supposed to be also doing, then you're going to get paid $30. But again, your honor, I don't think that's the proper analysis because under the EPA, you don't look, you don't punish the higher paid employee, you reward the lower paid employee, you bring them up to what the higher paid employee is being paid to do their job. There is no difference in what they do, your honor. At the school crossing post, they are not using their walkie-talkies, your honor. They are not issuing tickets, your honor. They are crossing children. Would you be making the same argument if some precinct sergeant said, sorry, Officer X, you've got to go do school crossing guard duty because everybody in the area is responsible has got the flu? But your honor— Would you then argue that now everybody has to be paid what the police officers do? No, I wouldn't argue that because that will never be the case, your honor, because they will never put police officers, and they haven't, during the period that's relevant in this case, put a police officer there. The only people they put there are traffic enforcement agents. Thank you, Mr. Archibald, very much. You've not reserved time, but we'll hear from opposing counsel. Thank you. The City of New York. May it please the Court. May it please the Court. My name is Yasmin Zainalbai, and I represent the Appalachee City of New York. Why don't you adjust the microphone still again? The podium may come down just a touch, too. The job of a Level II traffic enforcement agent is substantially different from that of a school crossing guard in terms of duties, responsibilities, qualifications, skill levels, and working conditions. The District Court correctly dismissed the plaintiff's EPA and New York City and state human rights law claims. To be clear, the appellants have abandoned the position that they took below, that school crossing guards do substantially the same job as traffic enforcement agents performing the full scope of their duty. By abandoning that position, they have effectively conceded that the two positions are not the same and that they have no claim under the EPA. Your adversary, Mr. Archibald, argues that when they are fulfilling the function of school crossing guards, they are doing the identical job, and yet the traffic enforcement officers are getting paid at their significantly higher rate or higher rate than are the school crossing guards. So that recast argument fails for multiple reasons, the first of which is that that framing of the scope of the comparison is specifically designed to isolate out every aspect of the two jobs that are different. And as we explained in our brief, an average traffic enforcement agent spends only 1% of his or her hours substituting in as a school crossing guard. What the appellant is asking this court to do is to ignore the other 99% of the time. That can't stand. This does not constitute substantially equal work, and there's no viable Equal Pay Act claim. The other issue is that the appellant's approach is contrary to the Equal Pay Act and its purpose. The Equal Pay Act aims to provide equal pay for equal work. By focusing on the 1% of the time, the appellant seeks to avoid the very question of whether school crossing guards and traffic enforcement agents do work that requires equal skill, effort, and responsibility. Appellants cited to the Marist College case, which does not support their point. In that case, this court approved the use of statistical analysis to create a comparable male professor. But that statistical regression analysis was specifically designed to control for differences between positions, ranks, years of service, division, tenure status. It specifically acknowledged that there were vast differences in the positions, but that this regression analysis attempted to control for them. Here, the plaintiffs urged the opposite approach. They're asking this court to ignore all the differences between the positions and focus only on the 1% of the time that traffic enforcement agents and school crossing guards are doing the same job. Clearly, that does not address the question of whether these jobs are substantially similar under the Equal Pay Act. And frankly, in arguing for this particular framing, the appellants are really just exposing the differences between the two positions. For example, school crossing guards only work near schools, whereas traffic enforcement agents can be posted to any intersection in the city. As the district court pointed out, this could include being posted to Times Square at night. The scope of these positions and their responsibilities are vastly different. The argument that the district court did not focus on actual job content is unavailing. The case report authority, the EEOC, cautions only against focusing on job titles and classifications, but that's not what the district court did in this case. The district court looked very carefully at the job requirements, training manuals, deposition testimony as to each of the two positions. This was not some generalized account. Really, the thrust of the appellant's claim is that both traffic enforcement agents and school crossing guards were directing traffic. If you look to the deposition testimony, what each party means by directing traffic is very different. School crossing guards only interact with traffic to the extent that they are required to do so to safely cross children, and they are not allowed to override traffic signals. The differences in these two positions are vast, unless the court has further questions. Thank you very much. Now, Mr. Archibald did, in fact, reserve two minutes. I misunderstood on that. Of course, I'm happy to hear from him again. Thank you, Your Honor. To prove discrimination under the EPA, there's a tripartite analysis that's necessary, the first of which, as the court is aware, is that the employer has to pay different wages to different sexes. We already established that one. There's a pay disparity, so we could dispense with that. The second part is that the employees perform work, and I'll quote, equal work on jobs requiring equal skill, effort, and responsibility. It is our position that since both the traffic enforcement agents and the school crossing guards do the exact same function at the school crossing posts, that they perform equal work. They're doing the same thing. And the third prong is that the jobs are performed under same or similar working conditions, i.e., they're both out in the cold, the sleet, the rain, the heat, everything else, inhaling the smog on a daily basis. So I think we have the three prongs satisfied in respect of proving a violation of the Equal Pay Act. Now, we've had testimony, and it's in the record from several school crossing guards, but what's most telling is the testimony from an individual named Maria Ferraria. She is the training coordinator of the school crossing guards. Her testimony could be found at A632. She was asked, and at the time she had four years' worth of tenure, she was asked, do you know what a school crossing guard does when they are in the field? After all, you train them. Her testimony was as follows. Well, I have to be honest with you, not really. I've never gone out there. I'm too busy. That was a trainer. So she couldn't even testify as to what the school crossing guards did out there. So we are saying that the testimony that was elicited from our school crossing guards, as well as we had an affidavit from a gentleman named Mr. Shah Jahan. He is the secretary-treasurer of the Communication Workers of America. That's the union that represents TA-1s and TA-2s. And he said, yeah, they do the same thing, and they're out there. They're just like us. There's really no difference when they're at a school crossing post. Now, what I'm asking the school— You want us to hold that it makes no difference that, using your adversaries' figures, it makes no difference that 1% of the traffic control officer's job may be school crossing guard jobs, while 100% of the school crossing guard's job is school crossing. Those statistics are debatable. I don't think they are correct, Your Honor, because— Let's go up to 5 or 10 or— of a lower-paid employee, and there's a male-female disparity that you have to elevate the lower-paid employee to the higher person's salary, Your Honor. Now, this court— Thank you, Mr. Archibald. I've given you some extra time, but your time is up. Thank you, Your Honor. Thank you very much. We'll reserve the decision, and we are adjourned.